9876

HURT v. SANDS & CO., INC.

(95 S. E. 111.)

DAMAGES—BREACH—ACTUAL DAMAGES—QUESTION FOR JURY.—In an action for corporation's breach of its contract to deliver merchandise in exchange for coupons from a book it had issued containing coupons to the amount of $2, evidence *held* sufficient to take to the jury the question of an award of actual damages, but not the question of punitive damages.

Before WHALEY, J., County Judge, Richland, 1917. Affirmed as to actual damages and reversed as to punitive damages.

This action was commenced in the magistrate's Court praying judgment for $2 actual damages, and $98 punitive damages. After refusal of magistrate to direct a verdict for defendant, the jury returned a verdict as follows: "$2 actual damages, and $73 punitive damages." The county Court affirmed the findings of the magistrate.

The complaint alleged that on or about the 10th day of April, 1917, plaintiff purchased from defendant one of its coupon books, containing coupons of the value of $2, payable in merchandise in the value of $2; that after plaintiff had purchased the book he requested and demanded that defendant sell and deliver to him in exchange for some of the coupons certain merchandise amounting in value to less than $2; that defendant wilfully, wantonly, negligently and carelessly refused to deliver the merchandise with intent to

cheat and defraud plaintiff, and plaintiff was thereby deprived of the merchandise which he sought to buy or obtain, and was denied his legal right to receive goods and merchandise in exchange for said coupons; that on account of this wilful, wanton, careless and negligent conduct plaintiff has been damaged in the sum of $2, the amount he paid for the book of coupons, and has been further damaged on account of the said acts of this defendant in the sum of $98. The answer was a general denial.

Plaintiff's testimony was as follows:

J. B. Hurt, plaintiff: I live in Columbia, S. C. (1634 Main street). Know Sands & Co. I purchased this coupon from defendant, Sands & Co. Book offered in evidence. No objection. Exhibit A. The money for this book was deducted from my salary with Southern Railway. I went to the defendant's store after I got book and requested Mr. Ford, in the store, to let me have 10 pound bucket of lard. I had $2 worth of coupons in the book. Mr. Ford was a clerk in defendant's store. He absolutely refused to deliver me the lard. He said it was against the rule to deliver anything; that he would send it out. The man who sold me the book did not tell me anything about this rule. I went. to defendant again and tried to buy $1 worth of cigarettes, but they refused to give them to me. He said it was against the rule to sell a man over 25c in cigarettes. I signed a contract giving Southern Railway permission to deduct from my salary money to pay for purchases from Sands.

Cross-examination: Have traded with Sands since November 15, 1915. I have always been able to get what I went for before. I have traded as high as $35 in a month. I usually see Mr. Ford when I trade. I always found Mr. Ford very nice. I still buy from Sands. I would not trade with people who I think would defraud me. I haven't the cash money to buy with. Everything is all right as far as quality is concerned. Did you have conversation with

Mr. Lazenby or Ford before you purchased book about sending out stuff? Don't recall. Prior to this I bought several books, but since this they do not sell me books. Do not recall book just prior to this one. Just before 10th April on 3d, did you buy a $1 book? Don't remember. Don't recall any conversation about sending lard out. Could not have had such conversation. Must not have happened since; $1 book would not buy lard. Do not deny buying lard on April 5th. Mr. Ford did not tell me that he would not sell me lard for book unless he delivered to my house, but said he would not sell lard to me and charge, but if would buy book he would deliver lard. I would not deny conversation with Ford, but do not remember. Four of us in family. April 27th I bought lard, it charged; 29th also, 24th March also, 26th March also, April 9th also ($1.75). The deductions from my time have been correct. Mr. Ford did refuse to sell me the lard on this occasion. He told me he would send to my house. He refused to sell it to me. I wanted it in my hand. I was going to do what I had been doing with lard, that is, give to a widow lady who I owed a good bit of money. When I tried to buy cigarettes he would not deliver to me. Did not get cigarettes. Got one cent's worth of matches. I did check up my time to see if it paid for this book. The deductions were correct. Don't remember my deductions just now for April. I boarded several places since working for Southern Railway; named several. I sent lard which I purchased from Sands to different parties.

Redirect examination: No claim up until now that I had not paid for book or any fraud in getting. They run what we call the Grab.

Recross-examination: After this occurrence I got two buckets of lard. I remember a conversation between us then. He spoke rather harsh to me. I carried a bucket of lard to my house one day and my wife phoned and they sent another that Monday.

Defendant's testimony was as follows:

T. E. Lazenby: I am employed by Sands & Co. I am local manager. Sands & Co. are in commissary business with Southern Railway. We sell railway employees and they sign our form agreeing that railway deduct from their wages the amount they trade. I have known Hurt for over a year. I waited on him occasionally. Q. Did you ever have a conversation with Hurt relative to delivering goods to his house? A. Yes. Q. When was that? A. Prior to the occasion. So far as I know we have never refused to sell Hurt lard or merchandise on book. They made statements to him when he presented this particular book. We are still selling Mr. Hurt. He owes us a balance of $16.42 at this time. These sheets show Hurt's account. Do you find a sale there of any book for April? Do you find one 13282B, $2? That's charged to Mr. Hurt's account. Any item referring to this book ruled competent. In April I have a credit for $2 entered on 26th April. I made credit on book because Hurt had that fuss about goods. Mr. Hurt has continued to purchase goods from us since April. Hurt bought a bucket of lard on Saturday after this occurrence. He requested I give him lard that he wanted to take home for dinner. His wife telephoned Monday morning. She asked me why I did not send lard charged and said Mr. Hurt did not bring home. I sent her another bucket of lard.

Cross-examination: Letter handed to Lazenby to read. Yes, I got this letter from Mr. Cooper. Exhibit B.

Z. F. Ford, sworn: I did not sell Mr. Hurt book in evidence at time it was bought. I was in store. Made no statement about book, I talked to him before he bought book. He wanted a bucket of lard (10 pounds) and I told I could not give him a bucket and charge, but would deliver to his house. He then asked for two fives. He then purchased a book and came back and requested that I give him a bucket

of lard.  I offered to take his order.  He then bought a dope, and, as he started out, he asked if I refused to deliver lard out.  I said, "No."  I have never refused to sell Hurt any goods.  What did you tell Mr. Hurt about a rule at time he got book?  I told Hurt that he knew rule that you are not allowed to buy stuff and then sell it.  You know it's against the rule to.  Never have refused to sell Hurt anything at any time.  Q. Mr. Ford, did Mr. Hurt send orders from time to time to you for lard and other merchandise to pay W. Gro. Co.?  A. Yes, sir.

Cross-examination: I refused to deliver this lard personally.  He asked me for it.  Did not apply for cigarettes to me.

H. W. Stephenson: I am district manager Sands & Co. South Carolina is my territory.  Contract between our company and Southern Railway by which we feed and take care of floating gangs.  We have stores located at different places.  We let any employee have merchandise.  In this agreement between us and customer he acknowledges that he understands.  It's just an agreement by which we can collect the money for purchases.  He reads and signs one of the forms and at close of month we turn in to Southern Railway and collect money.  That money is deducted each month from wages of employees.  Will sell my goods for cash.

Defendant's motion for a directed verdict was refused.

*Messrs. Thomas & Lumpkin,* for appellant, submit: *The magistrate erred in refusing motion by defendant for a directed verdict:* 70 S. C. 108; 77 S. C. —.

*Messrs. P. A. Cooper* and *Graydon & Graydon,* for respondent, make oral argument.

January 24, 1918.

The opinion of the Court was delivered by MR. JUSTICE WATTS.

This is an appeal from the county Court of Richland affirming judgment of the magistrate's Court. The exceptions raise but one point that it was error not to direct a verdict as asked for in the magistrate's Court in favor of the defendant.

Where there is any evidence to sustain the findings of fact in a magistrate's Court, concurred in by the Circuit Court, this Court will not interfere or grant a new trial. The Judge in the county Court "found from all the evidence in the case that the verdict of the jury and the judgment of the magistrate is supported by the preponderance of the evidence." The evidence on the part of the plaintiff and that of the defendant was wide apart and irreconcilable, and the jury would have been justified in finding in favor of either side. Having found for the plaintiff, and their finding being sustained both by magistrate and county Judge, I think the exceptions ought to be overruled, and judgment affirmed as to actual and punitive damages, but as a majority of the Court concurs in affirming the judgment as to actual damages and reversing it as to punitive damages, it is so adjudged.

MR. CHIEF JUSTICE GARY concurs in affirming the judgment for actual damages.

MR. JUSTICE GAGE. There was testimony tending to prove that plaintiff owned the book, and that defendant refused to honor it. There is, therefore, testimony tending to prove a contract and a breach of it. There is no testimony tending to prove that the defendant acted with fraudulent intent.

The judgment ought to be reversed *nisi*.

MR. JUSTICE HYDRICK. I dissent. The judgment ought to be reversed in toto.

MR. JUSTICE FRASER. It seems to me that there is no evidence that the plaintiff paid for the book, and there

can be no actual damages. There is no evidence that the defendant refused to deliver the lard. It was simply a question as to the place of delivery so that there can be no punitive damages.